# IN THE COURT OF APPEALS OF IOWA

No. 21-1229
Filed April 13, 2022

**GUS FRANCIS CABRERA III,**
    Petitioner-Appellant,

**vs.**

**STEPHANIE LYNN LINXWILER,**
    Respondent-Appellee.
_____

    Appeal from the Iowa District Court for Guthrie County, Richard B. Clogg,

Judge.

    A father appeals from a custodial decree**. AFFIRMED AS MODIFIED AND

REMANDED.**

    Gus Francis Cabrera III, Des Moines, self-represented appellant.

    Stephanie Lynn Linxwiler, Casey, self-represented appellee.

    Considered by May, P.J., Schumacher, J., and Blane, S.J.*

    *Senior judge assigned by order pursuant to Iowa Code section 602.9206

(2022).

**MAY, Presiding Judge.**

This case centers on G.C., a young child born in 2018. Gus Cabrera III and Stephanie Linxwiler are G.C.'s parents. The district court entered a decree governing custody, physical care, visitation, and child support for G.C. Gus appeals. We affirm with some modifications.

**I. Prior Proceedings**

In February 2020, Gus initiated this action to establish custody and visitation. In May, the district court entered a temporary order granting the parents joint legal custody, placing physical care of G.C. with Stephanie, granting Gus visitation, and ordering Gus to pay child support.

At trial, both parents were self-represented. Gus sought joint legal custody and joint physical care. Stephanie stated she was not against joint legal custody but wanted physical care placed with her. She stated the visitation schedule set under the temporary order worked well. With respect to holiday visitation, Stephanie submitted a proposed schedule within a proposed decree.[1]

When the court inquired into the parties' current incomes, Gus explained his income had been reduced recently because of the COVID-19 pandemic and a recent surgery, though he expected his income to be about $20,000 per year going forward. Stephanie testified that she makes $27.64 per hour and works forty-hour work weeks.

---

[1] The day before trial, Gus filed a proposed parenting plan that stated, "I have provided a holiday and special day parenting time schedule in the attached document to this form." However, there is no attached document in our record. So we do not have access to his proposed holiday visitation schedule.

Following the trial, the district court issued a decree. It granted both joint legal custody to the parties and sole legal custody to Stephanie. It placed physical care of G.C. with Stephanie, granted Gus visitation, and stated that "[t]he parties shall split holiday times or alternate years." Based on Gus's testimony, the court concluded he has the capacity to earn $10 per hour and imputed $20,800 in annual income to Gus. The court determined Stephanie's annual income is $40,180. So the court ordered Gus to pay Stephanie $295 per month in child support.

Gus appeals.[2] He argues the district court erred in (1) determining legal custody, (2) placing physical care with Stephanie, (3) providing a vague holiday schedule, and (4) calculating child support.[3]

## II. Scope & Standard of Review

Our review is de novo. Iowa R. App. P. 6.907. So, "[w]e review the entire record and decide anew the factual and legal issues preserved and presented for review." *Hensch v. Mysak*, 902 N.W.2d 822, 824 (Iowa Ct. App. 2017). Even so, "we afford deference to the district court for institutional and pragmatic reasons. This means we give weight to the district court's findings of fact." *Id.* (internal

---

[2] Stephanie waived her appellate brief.

[3] Gus also claims the district court erred by not allowing him access to Stephanie's exhibits through the electronic document management system (EDMS) prior to trial. Gus claims when he tried to access the exhibits through EDMS he received an error code stating he did "not have the correct rights to view the document." Gus never alerted the court to any issue, nor did he claim any discovery violation as he attempts to do now. Because Gus never raised these issues on the record below, they are not preserved for our review. *See Meier v. Senecaut*, 641 N.W.2d 532, 537 (Iowa 2002) ("It is a fundamental doctrine of appellate review that issues must ordinarily be both raised and decided by the district court before we will decide them on appeal.").

citation omitted).  So "we will affirm the district court unless the district court failed to do substantial equity."  *Id.*

## III. Discussion

### A. Legal Custody

We agree with Gus that we must clarify legal custody.[4]  We start by determining whether the district court intended to grant the parties joint legal custody of G.C. or if it intended to grant Stephanie sole legal custody of G.C.  Reviewing the decree, we think the district court intended to grant Stephanie sole legal custody of G.C.  So next we consider whether that determination serves G.C.'s best interest.  *See* Iowa Code § 598.41(1)(a).

Section 598.41(1)(b) expressly states, "if the court finds that a history of domestic abuse exists, a rebuttable presumption against the awarding of joint custody exists."  Here, the district court found there was "a history of domestic violence," and we give deference to that finding.  Even when there is a history of domestic abuse, however, we must determine if the presumption against joint legal custody is overcome.  We think that presumption is overcome here.  Significantly, we note when the court asked Stephanie, "I assume you're not against joint legal custody where [Gus] has access to things; is that correct?"  And Stephanie responded, "That's correct."  And Stephanie submitted a proposed decree that would provide the parties with joint legal custody.  So it seems as though Stephanie

---

[4] When making legal-custody and physical-care determinations under Iowa Code chapter 600B (2020), which is used to establish paternity and custody of children whose parents never married, we apply the factors set out in section 598.41(3), which governs custody and physical-care determinations in dissolution proceedings.  Iowa Code § 600B.40(2).

is amenable to joint legal custody and the parties' past history would not impede their ability to share the duties of joint legal guardians. We modify the decree to grant Gus and Stephanie joint legal custody.

### B. Physical Care[5]

Gus argues the district court should have awarded joint physical care. When determining whether joint physical care is in G.C.'s best interest, we consider the record as a whole in light of the factors identified in section 598.41(3) and our case law. *See In re Marriage of Hansen*, 733 N.W.2d 683, 696 (Iowa 2007). Where, as here, both parents are generally suitable caregivers, our decision usually boils down to "four key considerations: (1) stability and continuity of caregiving; (2) the ability of [the parents] to communicate and show mutual respect; (3) the degree of conflict between the parents; and (4) the degree to which parents are in general agreement about their approach to daily matters." *In re Marriage of Geary*, No. 10-1964, 2011 WL 2112479, at *2 (Iowa Ct. App. May 25, 2011) (citing *Hansen*, 733 N.W.2d at 696–99). Applying these factors here, we agree with the district court's decision against joint physical care. Stephanie has historically provided G.C. with the bulk of his physical care. She manages his day-to-day needs. Also, there is a high level of acrimony between Gus and Stephanie. They do not communicate well with one another. And they seem not to trust each other—at times, both seem to assume the other's conduct is motivated by ulterior

---

[5] Gus's appellate brief refers to visitation time in his section heading, but the substance of his corresponding argument discusses the physical-care determination. To the extent Gus attempts to challenge the amount of visitation awarded, any challenge is not sufficiently developed for our consideration. *See, e.g., State v. Williams*, No. 19-0152, 2020 WL 4497993, at *6 (Iowa Ct. App. Aug. 5, 2020) ("This argument is not sufficiently developed to enable our review of it.").

motives. So we do not think this family would be well-suited to joint physical care. And Gus does not request we consider placing physical care with him in the alternative.

**C. Holiday Schedule**

Gus also challenges the holiday schedule established in the decree as vague. On this point, we agree. After that, though, we have little to go on. Neither parent testified to what holidays their respective families celebrate or if they have unique traditions that could impact a holiday schedule. We also note that Gus did not provide a proposed holiday schedule to the district court. Nor does he propose one in his appellate briefing. However, Stephanie included one in a proposed decree that she submitted as an exhibit. It appears to be an equitable proposal that would provide the parents with more clarity. So we amend the decree to include the following holiday schedule:

| Holiday | Times | Even Years | Odd Years |
|---------|-------|-----------|-----------|
| Easter | 9:00 a.m.–5:30 p.m. | Stephanie | Gus |
| Memorial Day weekend | Friday 5:00 p.m.–Monday 5:30 p.m. | Gus | Stephanie |
| Mother's Day | 9:00 a.m.–5:30 p.m. | Stephanie | Stephanie |
| Father's Day | 9:00 a.m.–5:30 p.m. | Gus | Gus |
| Independence Day | 9:00 a.m.–5:30 p.m. | Stephanie | Gus |
| Labor Day weekend | Friday 5:00 p.m.–Monday 5:30 p.m. | Gus | Stephanie |
| Beggars' night[6] | 5:00 p.m.–9:00 p.m. | Gus | Stephanie |

---

[6] In central Iowa, "Beggars' Night is a tradition celebrated in place of Halloween, generally on an adjacent night." *Halloween 2021: Beggars' Night List*, KCCI,

| Thanksgiving | 9:00 a.m.–5:30 p.m. | Stephanie | Gus |
|---|---|---|---|
| Christmas Eve | 9:00 a.m.–5:30 p.m. | Stephanie | Gus |
| Christmas Day | 9:00 a.m.–5:30 p.m. | Gus | Stephanie |
| G.C.'s birthday | 9:00 a.m.–5:00 p.m. | Gus | Stephanie |

In the event this schedule conflicts with regular visitation or summer visitation, then this schedule controls.

### D. Child Support

Finally, Gus argues the district court incorrectly calculated his child support obligation by imputing too much income to him and undervaluing Stephanie's income. We first address Gus's complaint about the district court imputing his income. Iowa Court Rule 9.11(4) permits the court to impute income to a parent "based on a determination of earning capacity" when it "finds that a parent is voluntarily unemployed or underemployed without just cause." Here, the court found "[s]ubstantial injustice would otherwise result to . . . Stephanie and [G.C.] if the court used $10,000 as Gus's annual income. Adjustments are necessary to provide for the needs of the child and to do justice between the payor [and] the payee." The court then imputed Gus with $20,800 in annual income based on a determination he was capable of earning $10 per hour and working full-time. We agree with the district court that a substantial injustice would occur if the court did not impute this income to Gus. He is capable of making far more than the $10,000 per year he requests us to use when determining child support. He complains of

---

https://www.kcci.com/article/central-iowa-beggars-night-list-2021/37924900# (last updated Oct. 29, 2021, 6:35 AM).

poor past earnings because his ability to work was somewhat impacted by surgery and the COVID-19 pandemic. But those events did not prevent him from working altogether. And neither is likely to permanently impact his future earning capacity. We also note Gus stated he is a certified paralegal. This suggests his earning capacity is likely far higher than the $10 an hour rate imputed to him by the district court. Indeed, we think he is voluntarily underemployed. So we take no issue with the district court imputing Gus's income at $20,800.

Next, we address Gus's claim that the district court failed to use the correct income for Stephanie when determining child support. He notes Stephanie submitted the amount used a year prior to trial, yet she also provided more recent pay stubs and testimony suggesting she made more than the $40,180 used by the district court. We agree that Stephanie's most recent pay stub better reflects her current income and should be used to calculate child support. From that pay stub, we conclude her gross weekly earnings average $1308.05.[7] We multiply that by fifty-two weeks to find an annual gross income of $68,018.60. So we remand to the district court to recalculate Gus's child support obligation based on Stephanie's current income.

**AFFIRMED AS MODIFIED AND REMANDED.**

---

[7] Stephanie's gross income through June 5, 2021, was $28,777.06. We divided that gross amount by twenty-two weeks to determine her average weekly gross pay. Stephanie testified her income can vary because she makes time-and-a-half when she is on call and gets a call-back.